UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATSY L. SMITH,

                        Plaintiff,

    v.                                     07-cv-1078

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

Patsy L. Smith ("Plaintiff") brought this suit under section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. section 405(g), to review a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits.

**I.**     **FACTS**

     **a.**     **Procedural History**

Plaintiff applied for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits on June 9, 2004. On March 22, 2005, the applications were denied. Reconsideration was denied on October 20, 1999. On April 6, 2005, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 1, 2006.

In a decision dated August 1, 2006, the ALJ found that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. Specifically, the ALJ concluded that:

(1) Plaintiff met the insured status requirement; (2) Plaintiff has not engaged in substantial gainful activity since September 1, 1991; (3) Plaintiff's chronic low back pain secondary to degenerative disc disease and herniation constitutes a severe impairment, but his mental condition does not constitute a severe impairment; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff cannot perform any past relevant work; and (6) considering Plaintiff's age, education, language abilities, prior unskilled work, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

Plaintiff commenced the present action seeking review of the Commissioner's decision.

### b.    Medical History

Plaintiff was born on June 18, 1954 and attended school through the eighth grade. In April 2003, Plaintiff complained to his physician of localized pain in the middle of the lower back that radiated down to the buttock and knee of the right leg. Tr. at 127. Plaintiff stated that the pain had been present for many years. Id. Plaintiff also reported episodic fits of anger and depression. Id. Upon examination, the physician found "no obvious lesions," tenderness to palpation of spinous processes on lower thoracic/lumbar spine and of the right sciatic notch. Id. Plaintiff was found to have full range of motion, a normal gait, to be alert, able to give a dependable history, and giving appropriate answers to questions. Id. One month later, Plaintiff complained of increased pain. Tr. at. 129. His physician, therefore, recommended an MRI. Plaintiff was prescribed medications for his depression. Id.

An x-ray identified "mild DJD . . . in the disk spaces and posterior articulations with no acute bony injuries." The MRI revealed "normal alignment and position of the bones" with "[s]ome slight disk bulging at 3/4, 4/5 and 5/1. No focal disk herniations. A small, piece of disk has herniated in cephalic direction into the posterior body of L4 near the end of plate. This can sometimes result in pain. No other significant findings." Tr. at 140-41.

On June 4, 2003, Plaintiff was examined by a neurologist. The neurologist noted "progressive back pain without defined radicular symptoms. When working or over-exerting himself he may have back and hip pain, but never any numbness, parasthesias, tingling or weakness distal in his feet. . . . [M]inimal mechanical findings. He has negative straight leg raise. He has no sensorimotor abnormalities in the lower extremeties." The neurologist found that the MRI showed "significant degenerative disc disease at multiple levels" and a "lesion in the posterior L4 body" which he concluded to be "isolated hemangioma." The neurologist stated that "[h]is collapsed disc spaces, which are completely degenerated at multiple levels, could certainly be a source for chronic back pain which would be exacerbated with physical activity." The neurologist did not recommend surgery, but, rather, use of an non-steriodal anti-inflammatory drug, physical therapy, and proper exercises. Tr. at 146-47. The treating physician referred Plaintiff to physical therapy. Tr. at 131. In October 2003, Plaintiff's spine was noted to be stable with Relafen and his depression well-controlled with Celexa. Tr. at 132.

In May 2004, Plaintiff presented to the emergency room for pain running down his left leg. The exam revealed tenderness diffusely over his left lower back. Plaintiff was prescribed pain medication and released. Tr. at 227-235. Two days later, Plaintiff returned to the emergency room complaining of low back pain radiating into his left thigh and leg.

Plaintiff was given morphine and referred to physical therapy. An x-ray demonstrated disc space narrowing at L4/5 "which is slightly increased since prior exam from 2003. . . ." Tr. at 222. An x-ray of Plaintiff's left hip revealed mild degenerative joint disease.

Plaintiff reported for physical therapy on three occasions. Plaintiff complained of increased back pain, apparently the result of a full day of doing yard work in a bent-over position and spending hours on a boat fishing. The physical therapist noted that "[n]ot a lot of testing is possible with this patient, he is barely able to move. . . . He is able to lay flat on his back but that is the only position." Tr. at 109. The therapy appears to have been largely ineffectual. Tr. at 209-212.

A May 2004 MRI revealed "diffuse disc bulging at the 4-5 and 5-1 disc space levels. At 4-5, there also appears to be a central disc herniation. At the 3-4 level, there is moderate bulging noted."

In 2005, Plaintiff continued to be treated for his back pain. In February, he underwent a psychiatric examination. Plaintiff was found to be cooperative and responsive. His manner of relating, social skills, and overall presentation were found adequate. Plaintiff's speech was intelligent and fluent and his thought processes clear. His mood was found to reflect physical pain. Plaintiff was well oriented, and his attention, concentration, and recent and remote memory skills were intact. His intellectual functioning was found to be in the borderline range with his "general fund of information . . . somewhat limited." His insight and judgment were reported to be fair. Plaintiff reported that he did most of his daily living activities, except that he did not manage money, shop or take public transportation. Plaintiff also reported spending his days doing chores, including shoveling and mowing. The psychologist further found that Plaintiff appeared capable of understanding and following

simple instructions.  It was found that Plaintiff could maintain attention and concentration, regularly attend to a routine and maintain a schedule, learn some new tasks, make appropriate decisions, relate to and interact with others, and deal with a moderate amount of stress.  It was noted that, socially, Plaintiff did not always get along well with family and friends. Plaintiff was noted to have some signs of depression and anger and/or irritability.  The psychologist concluded that "[b]arring any medical contraindications, he appears to be capable of performing simple and some complex tasks with supervision and independently."  Tr. at 163-64.

In February 2005, Dr. Ganesh performed a consultative evaluation.  Dr. Ganesh found no acute distress, normal gait, proper hand/finger dexterity, proper grip strength, and full flexion and range of motion of the cervical spine and upper extremities.  As to the thoracic and lumbar spines, Dr. Ganesh noted "flexion 75°, limited extension.  Lateral flexion 15°.  Full rotary movements bilaterally.  There is spinal and paraspinal tenderness.  No SI joint tenderness.  There is left sciatic notch tenderness. . . . SLR test negative sitting, lying down position 30°. . . " Tr. at 173.  The diagnosis was chronic lower back pain and central disk herniation L4-5, mild bulging L3-4 and L5-S1.  Dr. Ganesh determined there were no gross limitations as to sitting, standing, walking, or climbing and mild to moderate limitation to lifting, carrying, pushing and pulling.

In March 2005, Plaintiff underwent a physical residual function capacity assessment.  That assessment limited Plaintiff to occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking about 6 hours in a workday, sitting about 6 hours in a workday, and unlimited in pushing and pulling.

In March 2005, a Psychiatric Review Technique Form was prepared by Dr. Tatar. Dr. Tatar diagnosed Plaintiff has having borderline intellectual functioning. Dr. Tatar found Plaintiff to be moderately limited in the areas of maintaining social functioning and maintaining concentration, persistence, or pace. Tr. at 185-191. Dr. Tatar further found Plaintiff to be moderately limited in the areas of: (I) understanding and remembering detailed instructions; (II) carrying out detailed instructions; (III) maintaining attention and concentration for extended periods; the ability to make simple work-related decisions; (IV) the ability to accept instructions and respond appropriately to criticism from supervisors; and (V) the ability to respond appropriately to changes in the work setting. Tr. at 15-96.

In October 2005, Dr. Reason provided a complete medical report. Dr. Reason diagnosed Plaintiff with degenerative joint disease of the lumbosacral spine. Dr. Reason found Plaintiff to be limited to lifting or carrying less than ten pounds, standing and/or walking less than 2 hours in an 8-day workday, needing to alternate sitting and standing to relieve pain and discomfort, and limited in his upper and lower extremities. Dr. Reason concluded that Plaintiff was limited in several manipulative functions and in his environmental limitations.

    **c.**    **Hearing Before the ALJ**

On June 1, 2006, Plaintiff appeared at a hearing before an ALJ. Plaintiff offered the only testimony at the hearing. At the hearing, Plaintiff testified to chronic lower back and hip pain, rising to the level of a seven or eight on a scale of one to ten. Plaintiff also testified to having spasms, being able to sit for one-half hour before having to change positions due to pain, being able to stand for about one-half hour before having to change positions, and sleeping for only 60 to 90 minutes at a time. Plaintiff testified to rarely going shopping and

driving short distances.  Plaintiff testified that he experienced sharp pains going up his spine less than once or twice a month.  Plaintiff also stated that his left calf sometimes feels numb.

Based on the record evidence, the ALJ concluded that (1) Plaintiff met the insured status requirement; (2) Plaintiff has not engaged in substantial gainful activity since September 1, 1991; (3) Plaintiff's chronic low back pain secondary to degenerative disc disease and herniation constitutes a severe impairment, but his mental impairment did not; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff cannot perform any past relevant work; and (6) considering Plaintiff's age, education, language abilities, prior unskilled work, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

The decision of the ALJ was affirmed by the Appeals Counsel.  Plaintiff now seeks review of the Commissioner's determination.

## II.     STANDARD OF REVIEW

The court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the court must determine whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 9 (2d Cir. 1990); Shane v. Chater, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 9; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  The Commissioner's finding will be

deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez, 77 F.3d at 46; Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion.'"  Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits.  See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel, 204 F.3d 48, 48–49 (2d Cir. 1999); Bush v. Shalala, 94 F.2d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment which is listed in Appendix 1 of the regulations, [t]he [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he

has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Prior to applying this five-step framework, the ALJ must determine the date on which the claimant-plaintiff last met the Act's insured status requirement, whereby the claimant must establish disability prior to or on that date last insured.  See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131(b), 404.315(a); see also Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir. 1989).

## III.   DISCUSSION

### a.   Whether the ALJ Properly Assessed the Severity of Plaintiff's Mental and/or Emotional Condition

Plaintiff first claims that the ALJ improperly assessed his mental condition, claiming that the ALJ dismissed Plaintiff's borderline intellectual functioning.  Defendant responds that the ALJ properly assessed Plaintiff's mental history and concluded that it was not sufficiently severe.

"At this severity step, only de minimis claims may be properly screened out. . . . A finding of not severe is appropriate when an impairment, or combination of those impairments 'does not significantly limit your physical or mental ability to do basic work activities.'"  Oakes v. Astrue, 2009 WL 1109759, at *10 (N.D.N.Y. 2009) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) and quoting 20 C.F.R. § 404.1521(a)).

> If the impairment is mental, the ALJ must complete a "special technique" to determine whether the mental impairments rises to the level of severe. 20 C.F.R. §§ 404.1520a(a); 416.920a(a). The special technique encompasses four areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme."

> 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). If an individual's impairment results in none, or mild, for the first three categories and none in the fourth, a finding of non-severe is generally appropriate. 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

Oakes, 2009 WL 1109759 at *11.

There can be little doubt that Plaintiff suffers from certain mental limitations, including the possibility of borderline intellectual functioning with impulse control disorder. While Dr. Shapiro ruled out a diagnosis of borderline intellectual function, Dr. Kimball diagnosed Plaintiff as having borderline intellectual function. Dr. Kimball assessed Plaintiff's verbal IQ to be 73 (4th percentile) with a full scare IQ of 52 (5th percentile). Dr. Tatar similarly indicated that Plaintiff suffered from borderline intellectual function. Tr. at 185. Dr. Tatar, the only physician to complete a special technique analysis, further found Plaintiff to be moderately limited in certain areas, such as maintaining social functioning and maintaining concentration. This alone may be sufficient for a finding of severe. Oakes, 2009 WL 1109759, at *11. There is significant other medical evidence in the record supporting Plaintiff's mental limitations.

The ALJ, nonetheless, concluded that "[w]hile there is in the record evidence for borderline intellectual functioning . . . the record as a whole does not support 'severe' limitation on this basis, especially since this claimant has worked considerably and successfully in the past despite any indications for diminished intellect." This Court finds that this conclusion is not supported by substantial evidence.

First, it is unclear whether the ALJ considered the "special technique" discussed above. The ALJ did not reference or otherwise discuss the limitations referenced by Dr. Tatar. Second, the ALJ asked very few questions at the hearing concerning Plaintiff's work history. There were no questions whether Plaintiff had worked "considerably" or

"successfully." There were no questions relating to the effect Plaintiff's mental condition had on his ability to work. Rather, the questioning focused primarily on Plaintiff's back-related issues. The evidence concerning Plaintiff's earnings since 1982 suggests that he worked very little and/or unsuccessfully. Tr. at 66. While Plaintiff apparently earned some unreported income, there is nothing in the record quantifying that amount. Moreover, while the Disability Report indicates that Plaintiff worked for many years doing construction work and several years working in a restaurant, there is insufficient record evidence concerning his "success" at these jobs in light of his mental condition.

Third, while the ALJ relied upon Dr. Kimball's conclusion that Plaintiff could do hands-on type jobs in simple construction, his conclusion fails to consider whether Plaintiff's mental limitations *together with his physical limitations*[1] rose to the level of sufficient medical severity. 20 C.F.R. § 404.152.[2] The failure to undertake this analysis could have materially affected the remainder of the ALJ's disability analysis. This is particularly so where, as here, the psychologist, Dr. Shapiro wrote that "[*b*]*arring any medical contraindications*, he appears capable of performing simple and some complex tasks. . . ." (emphasis added). As § 404.152 makes clear, "[i]f we do find a medically severe combination of impairments, **the combined impact of the impairments will be considered throughout the disability**

---

[1] As noted, the ALJ found Plaintiff's chronic back pain secondary to degenerative disc disease and herniation to be a severe impairment.

[2] ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, **we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.** If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).") (emphasis added).

**determination process**." (emphasis added).  Based on the ALJ's finding that Plaintiff's mental impairment was not severe and, upon review of the ALJ's written decision concerning the step three analysis, it appears that the ALJ did not consider Plaintiff's mental condition in conjunction with his physical impairments in determining whether Plaintiff had an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Because the ALJ did not undertake the requisite analysis at step two of whether Plaintiff's mental limitations combined with his physical limitations were sufficiently severe, Plaintiff did not have the benefit of that determination considered in conjunction with the remaining parts of the five-step analysis.  See 20 C.F.R. § 404.152.

The Court, therefore, finds that remand is warranted for further assessment concerning the degree to which Plaintiff's mental limitations affected his ability to perform basic work functions, particularly when considered in combination with his physical limitations, and, thus, whether his mental limitations are severe.  Having found that remand is warranted on these grounds, it is unnecessary to address the parties' remaining contentions.

## IV.    CONCLUSION

In reviewing disability claims, a district court may affirm, modify, or reverse the determination of the Commissioner with or without remanding the case for a rehearing.  See 42 U.S.C. § 405(g).  For the reasons previously stated, the Court hereby ORDERS that the case be remanded to the Commissioner for proceedings consistent with this decision.

IT IS SO ORDERED.

Dated: July 2, 2009

Thomas J. McAvoy
Senior, U.S. District Judge